UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **(2) ANTHONY ADAMS**, <br><br> Defendant. | 2:18-CR-20641-TGB <br><br> **ORDER DENYING EMERGENCY MOTION FOR RELEASE** |

Defendant Anthony Adams moves this Court, in light of the ongoing COVID-19 pandemic, to release him into home confinement. This Court previously denied motions for revocation of Adams' detention order in 2018 and 2019. Because Defendant has failed to mitigate the concerns regarding the danger he poses to the public that justified the original order of detention, the motion will be denied.

## BACKGROUND

On July 12, 2019, Adams pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). According to the indictment, for nearly three years, Adams and his

coconspirators obtained stolen credit and debit account information from real, identifiable victims on the dark web and used the stolen information to purchase more than one million dollars' worth of gift cards and Apple iPhones at Walmarts across the country. ECF No. 1.

On September 28, 2018, Adams consented to detention at a hearing before Magistrate Judge Mona K. Majzoub. On November 1, 2018, Adams filed his first motion for revocation of his detention order. ECF No. 76. On November 26, 2018, the Court denied Adams' first motion. On March 15, 2019, Adams filed a second motion for revocation of his detention order. ECF No. 99. On July 18, 2019, the Court denied Adams' second motion. At the latter hearing, the Court applied the 18 U.S.C. § 1343 factors and concluded that Adams had not met his burden by showing by clear and convincing evidence that he would not present a risk of flight or danger to the community if released. Hearing Tr., ECF No. 184, PageID.967. The Court noted at the time that his mother, Ms. Adams, appeared to be a competent third-party custodian, but that Adams' long history of committing new crimes while out on supervision weighed against his release. *Id.* at PageID.966.

Adams is currently being held at the Isabella County Jail. Adams is 31 years old, and appears to be taking certain medications for hypertension. His Motion states that he suffers from cardiovascular disease, which is synonymous with heart disease, but the medical records submitted demonstrate a history of hypertension and treatment for hypertension, which is high blood pressure. *See* Ex. 8, ECF No. 186; Ex. A., ECF No. 190.[1] Moreover, Defendant's medical history, dated January 18, 2019, indicates a prior history of "hypertension," which is checked "yes," but nothing about heart disease, which is checked "no." *See* ECF 190, PageID.1145. So the only condition that Defendant identifies is high blood pressure, and although Defendant does not provide evidence that this condition presents particular risks relating to COVID-19, the evidence regarding this question is mixed, and in another recent case, this Court, after carefully discussing that evidence, concluded "that a

---

[1] Defendant's Motion asserts that he is taking HCTZ (hydrochlorothiazide), Hytrin, (terazosin hydrochloride), and Norpace (disopyramide phosphate). ECF No. 186, PageID.986. Two of these drugs are indicated for treatment of hypertension, HCTZ and Hytrin. *See* Physician Desk Reference, ECF No. 186-8. But Norpace is different, it is indicated for treatment of "documented, life-threatening arrhythmias such as sustained ventricular tachycardia," or for the "maintenance of sinus rhythm in patients with atrial fibrillation or atrial flutter." *Id.* However, upon reviewing Defendant Adams' medical records, ECF No. 190, it appears that the drug he is taking is not "Norpace," but rather "Norvasc" (amlodipine besylate). *See id.* at PageID.1156-57. Although the handwriting in the medical records is not particularly easy to read, the entries listed under the title "antihypertensive medications" on the pages cited, PageID.1156-57, more closely resemble "Norvasc" than "Norpace." Moreover, Norvasc is indicated for the treatment of hypertension, but Norpace is not. *See amlodipine besylate – Drug Summary*, Prescribers' Digital Reference, https://www.pdr.net/drug-summary/Norvasc-amlodipine-besylate-1853 (last visited May 19, 2020).

3

diagnosis of hypertension alone—without other evidence indicating a low risk of flight or dangerousness—would be insufficient grounds to release a defendant from detention pending sentencing." *See United States v. Sanders*, No. 19-cr-20288, 2020 WL 2320094, at *6 (E.D. Mich. May 11, 2020). The Government proffers that as of the date of its response, there were no known COVID-19 cases at the Isabella County Jail, and that the jail is under 55% capacity. ECF No. 189, PageID.1134.

Sentencing was previously set for March 5, 2020, but has been postponed. Per the revised presentence report, Adams faces a guidelines range of 135-168 months for the money laundering and wire fraud counts, in addition to a mandatory 24-month sentence for the four aggravated identity theft counts, which must run consecutive to any sentence imposed for the money laundering and wire fraud counts. As Adams himself noted at the 2019 hearing on revocation of his detention order, his sentence "is going to be a significant one." ECF No. 184, PageID.956.

## DISCUSSION

Adams cites to 18 U.S.C. § 3142(i), but that provision of the Bail Reform Act covers the situation where an individual is detained while awaiting trial—not where a person has been convicted by guilty plea and

4

is awaiting sentencing. *Compare* 18 U.S.C. § 3142 (governing persons "charged with an offense") *with* 18 U.S.C. § 3143 (governing persons who have "been found guilty of an offense and who [are] awaiting imposition or execution of sentence"). Although § 3142(i) permits a judicial officer to temporarily release a defendant from federal custody if he or she "determines such release to be necessary for preparation of the person's defense or for another compelling reason," that provision does not apply to Adams' situation. *See Sanders*, 2020 WL 2320094 at *8 (declining to apply Section 3142(i) to inmate awaiting sentencing); *United States v. Roscoe*, No. 19-cr-20537, 2020 WL 1921661, at *4 (E.D. Mich. Apr. 21, 2020) (Drain, J.) (same; collecting cases).

Because Adams has already pled guilty to a federal offense and is awaiting sentencing, his motion is governed by 18 U.S.C. § 3143, a provision of the Bail Reform Act applying to decisions of release or detention of a defendant pending sentencing or appeal. That statute provides that judicial officers should order detention of a defendant who has pled guilty to an offense requiring a term of incarceration "*unless* the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the

5

community if released." 18 U.S.C. § 3143(a). Adams has the burden of convincing the Court that he is not a flight risk or a danger to the community. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988).

Here, Adams pled guilty to six felony counts for his role in a nationwide, multi-year, multimillion-dollar credit and debit card fraud scheme. ECF No. 1. Adams' criminal activity left innumerable victims to deal with the personal havoc wrought by identity theft. He faces a serious sentence: two years plus a guidelines range starting at 135 months. Because of Adams' long history of committing new crimes while out on supervised release, this Court has already twice found that he would pose a danger to the community or a risk of flight if released. *See* ECF No. 184. Although the Court recognizes the alarming scale and gravity of the COVID-19 pandemic and the serious health risks posed by the SARS-CoV-2 virus, particularly to those with preexisting health conditions or advanced age, the Court is bound by 18 U.S.C. § 3143(a), the statutory scheme established by Congress. In this third motion for release, Adams not provided the Court with any new information that would alter the Court's calculus regarding the danger he poses to the

6

community. Thus, the Court again finds that Adams has not met his burden under Section 3143(a).

## CONCLUSION

While this Court recognizes the dangers posed by the COVID-19 pandemic, it is bound by the conditions set forth in the Bail Reform Act in considering Adams' Motion. This Court has found on two previous occasions—and again here for a third time—that Adams would pose a serious risk to the community if released. Under 18 U.S.C. § 3143(a), that finding is dispositive of Adams' Motion. Accordingly, Adams' Emergency Motion for Release (ECF No. 186) is **DENIED**.

**SO ORDERED**.

DATED: May 26th, 2020.

                                        BY THE COURT:

                                        /s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        United States District Judge