UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  v.  **ANTHONY ADAMS,**  Defendant. | 2:18-CR-20641-TGB-APP-2  HON. TERRENCE G. BERG  **ORDER DENYING DEFENDANT'S MOTION FOR BOND**  **(ECF NOS. 389 & 390)** |

Presently before the Court is Defendant Anthony Adams' Motion for Bond (ECF Nos. 389 & 390) pending sentencing after admitting responsibility for violating the conditions of his supervised release.

For the foregoing reasons, the Motion will be **DENIED**.

## I. BACKGROUND

On September 20, 2018, Anthony Adams was indicted for conspiracy to commit wire fraud, 18 U.S.C. § 1349, conspiracy to commit money laundering, § 1956, and several counts of aggravated identity theft, § 1028A(a)(1). According to the indictment, for nearly three years, Adams and his coconspirators obtained stolen credit and debit account information from real, identifiable victims on the dark web and used the stolen information to purchase more than one million dollars' worth of gift cards and Apple iPhones at Walmarts across the country. ECF No. 1.

Case 2:18-cr-20641-TGB-APP ECF No. 392, PageID.3169 Filed 10/27/25 Page 2 of 7

Adams committed those acts while under a criminal justice sentence for credit or debit card forgery in Nevada. ECF No. 250 (sealed), PageID.1530.

On September 28, 2018, Adams consented to detention pending trial. ECF No. 23. Adams remained in detention for the entirety of his pre-trial proceedings, despite filing three motions for bond revocation.[1] In July 2019, Adams pleaded guilty to the charges and, in November 2021, he was sentenced to a total of 96 months' imprisonment followed by 2 years' supervised release. ECF No. 274. Adams commenced his supervised release term on August 23, 2024.

But starting in October 2024, Adams started engaging in similar criminal behavior again. United States Probation Officer Elizabeth Campana filed a Violation Report and Petition for Warrant on March 5, 2025 charging Adams with eight violations of supervised release, five of which alleged that he committed new criminal conduct. ECF No. 370. The

---

[1] On November 1, 2018, Defendant filed his first motion for revocation of his detention order, which the Court denied. ECF No. 76. He filed a second motion for bond revocation on March 15, 2019. ECF No. 99. The Court denied the motion after a hearing, because Defendant had not met his burden to show by clear and convincing evidence that he would not present a risk of flight or danger to the community if released under 18 U.S.C. § 1343, especially in light of his long history of committing new crimes while out on supervision. Hearing Tr., ECF No. 184, PageID.966-67. Defendant filed a third motion for bond on April 23, 2020 in light of the then-ongoing COVID-19 pandemic, which the Court denied. ECF No. 197.

report was amended on September 8, 2025 to include two additional violations. ECF No. 388.

The Violation Reports alleged that shortly after his release, between October 10, 2024, and January 16, 2025, Adams improperly and unlawfully obtained goods from home improvement retail stores, including Lowe's Home Improvement and Home Depot, by opening business credit accounts in the names of real victim businesses, using personally identifiable information of individuals connected to these businesses, without those individuals or businesses' knowledge or approval, for his own use and control. ECF Nos. 370 & 388. The Violation Reports also alleged that Adams left the judicial district without permission, in violation of his conditions, in October 2024 (Chicago) and November 2024 (Los Angeles). *Id*. He also failed to obtain employment or otherwise participate in any educational program since starting supervised release. *Id*.

On March 18, 2025, Adams had his initial appearance on the supervised release violation, and he consented to detention on March 20, 2025. The Court scheduled a supervised release violation hearing for March 28, 2025 and the parties filed several stipulations to adjourn the hearing until September 9, 2025. ECF No. 387. On September 9, 2025, the Court held a hearing on the supervised release violation petition at which Adams admitted to all the violations. He was subsequently

3

indicted for the same criminal conduct. *See United States v. Adams*, No. 2:25-cr-20668-TGB-APP.

Adams requested during the supervised release violation hearing that his detention be revoked and that he be released on bond pending sentencing on December 19, 2025.[2] The Government did not object to the request. The Court took the motion under advisement and allowed defense counsel to brief the issue. On September 16, 2025, Adams filed a Motion for Pretrial Release which states that it is not opposed by the Government. ECF No. 390.

## II. LEGAL STANDARD

The standard for release pending sentencing of a supervised release violation is governed by the standard set forth in Federal Rule of Criminal Procedure 32.1(6) which applies 18 U.S.C. § 3143(a)(1). *See United States v. Phillips*, 2024 U.S. Dist. LEXIS 181114, *2-3 (E.D. Mich. Oct. 2, 2024)(Altman, M.J.). Under § 3143(a)(1), a person who has been found guilty and who is awaiting imposition of a sentence must be detained, "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." The burden of establishing by clear and convincing evidence that the defendant will not

---

[2] The parties requested sentencing on the supervised release violation and the new indictment to be held together. The plea hearing regarding the new indictment is currently scheduled for November 5, 2025.

flee or pose a danger to any other person or to the community rests with the defendant. Fed. R. Crim. P. 32.1(6).

### III. DISCUSSION

Adams filed this fifth motion for release (three motions for pre-trial release in 2018, 2019, and 2020, one motion for sentence reduction in 2022, and the instant motion in 2025) so he can spend time with family before starting a possibly lengthy prison sentence. Adams argues that he is not a flight risk given that he has accepted responsibility and has significant and lifelong ties to the district, namely his parents and children, including a newborn he has yet to meet. He argues that he is not a risk of violence because the offenses were non-violent, and that any concern about continued criminal activity can be mitigated by strict conditions of supervision, such as home confinement and tether. He also highlights that the Government does not object to release pending sentencing.

While the Court understands Adams' legitimate desire to spend time with his family, Adams has not met his burden of showing he would not be a risk of flight or danger to the community should he be released. *See* Fed. R. Crim. P. 32.1(6). In fact, this Court has already thrice found that Adams would pose a danger to the community or a risk of flight if released because of his long history of committing new crimes while out on supervised release. *See* ECF Nos. 184 & 197.

Considering Adams' recent and repeated history of non-compliance with supervised release conditions, he has failed to show he is likely to comply with conditions this time around. When seeking a sentence reduction in 2022, Adams had stated that time in prison had fostered in him a respect for the law, and that he planned to enroll in vocational training if released. ECF No. 318, PageID.2562, 2565. But since his release in August 2024, he has failed to show "respect for the law" as he has continued to commit wire fraud and identity theft and also violated his conditions of supervised release by leaving the judicial district without permission twice. ECF Nos. 370 & 388. He has also failed to obtain employment or otherwise participate in any educational program, in violation of his supervised release conditions, despite his alleged intention to do so upon release. *Id.*

Thus, it cannot be said Adams has been "doing well under supervision." *See United States v. Hicks*, 2024 U.S. Dist. LEXIS 143928, *2-3 (E.D. Mich. Aug. 13, 2024)(Altman, M.J.) (denying bond despite noting that defendant "appears to have been doing well under supervision for the past two years, including getting a job"). Rather, Adams' "history of non-compliance while under supervision by engaging in criminal activity"—more specifically, engaging in the same pattern of criminal activity as his underlying and earlier convictions—and by violating his conditions of supervised release undermine Adams'

argument that strict conditions could mitigate the risk of flight or danger to the community. *See Phillips*, 2024 U.S. Dist. LEXIS 181114, *2-3.

Therefore, Adams has failed to show he is not a risk of flight or danger to the community. *See* Fed. R. Crim. P. 32.1(6). Given Adams' repeated non-compliance with supervision conditions and criminal behavior under supervision, the Court finds Adams is not suitable for bond pending sentencing. Therefore, Adams' Motion for Bond (ECF Nos. 389 & 390) is **DENIED**.

**SO ORDERED.**

Dated: October 27, 2025          /s/Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE